IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 20, 2017 Session

**TOMMY LYNN LAWSON ET AL. v.
KNOXVILLE DERMATOLOGY GROUP, P.C. ET AL.**

Appeal from the Circuit Court for Knox County
No. 2-389-16     William T. Ailor, Judge

No. E2017-00077-COA-R3-CV

The plaintiffs initiated this health care liability action against two defendant medical providers, a dermatology practice and a certified physician's assistant employed by the practice.  The defendants filed separate motions to dismiss, with each respectively asserting that the plaintiffs' claims should be dismissed for failure to substantially comply with Tennessee Code Annotated § 29-26-121(a)(2)(E), which provides that a pre-suit medical authorization must be compliant with the Health Insurance Portability and Accountability Act ("HIPAA").  Following a hearing, the trial court dismissed the plaintiffs' claims without prejudice upon finding that the medical authorization forwarded by the plaintiffs was incomplete and failed to substantially comply with HIPAA's release requirements.  The plaintiffs have appealed solely the dismissal of the health care liability claim against the dermatology practice.  Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and ARNOLD B. GOLDIN, JJ., joined.

Timothy L. Baldridge, Knoxville, Tennessee, for the appellants, Tommy Lynn Lawson and Katrina Lawson.

James H. London, Carrie S. O'Rear, and Jeremey R. Goolsby, Knoxville, Tennessee, for the appellees, Knoxville Dermatology Group, P.C., and Katie Hageman, PA-C.

**OPINION**

I. Factual and Procedural Background

The plaintiffs, Tommy Lynn Lawson and Katrina Lawson, filed a complaint against the defendants, Knoxville Dermatology Group ("KDG") and Katie Hageman, Certified Physician's Assistant, (collectively, "Defendants"), on August 23, 2016. The complaint involved the events that transpired on April 29, 2015, when Mr. Lawson sought treatment with KDG for a Methicillin-resistant Staphlococcus aureus ("MRSA") infection on his left ear. The Lawsons alleged that during the visit, Mr. Lawson was injured by the negligence of KDG and Ms. Hageman, specifically their alleged failure to properly secure the examination table, which purportedly flipped over as Mr. Lawson was attempting to lift himself onto it, resulting in alleged injury when he "f[e]ll straight down onto the stool with his left leg underneath him." Ms. Lawson joined in the complaint as a plaintiff, seeking recovery for loss of consortium.

On October 3, 2016, KDG and Ms. Hageman filed separate motions to dismiss for failure to comply with provisions of Tennessee Code Annotated § 29-26-121. They asserted that the Lawsons' HIPAA authorization form did not list which individual(s) or organization(s) were authorized to make disclosures of the specified medical records. *See* 45 C.F.R. § 164.508 (c)(1). Defendants further alleged that the Lawsons' action was untimely. Tennessee Code Annotated § 29-26-116(a) (2012) provides a one-year statute of limitations applicable to health care liability actions, which, with proper pre-suit notice, may be extended by 120 days pursuant to Tennessee Code Annotated § 29-26-121(c) (Supp. 2016). Defendants asserted that because the Lawsons had failed to provide sufficient pre-suit notice, they were precluded from relying on the 120-day extension.

Following a hearing, the trial court granted the motions to dismiss in an order entered on December 16, 2016, dismissing all claims without prejudice. The Lawsons timely appealed, limiting the issue raised on appeal to the dismissal of the health care liability claim against KDG. The Lawsons have not appealed the dismissal of Ms. Hageman as a defendant or the dismissal of Ms. Lawson's claims for loss of consortium.[1]

---

[1] We note that as claims arising from the health care liability claims in this action, Ms. Lawson's claims for loss of consortium were also governed by the Tennessee Health Care Liability Act. *See Igou v. Vanderbilt Univ.*, No. M2013-02837-COA-R3-CV, 2015 WL 1517794, at *7 (Tenn. Ct. App. Mar. 27, 2015) ("[T]he plain language of the THCLA leads us to the conclusion that Mrs. Igou's loss of consortium claim is a health care liability action under the Act . . . .").

2

## II. Issue Presented

The Lawsons present one issue on appeal, which we have restated slightly as follows:

Whether the trial court erred by finding that the medical authorization included in the Lawsons' pre-suit notice to KDG did not substantially satisfy the requirements of Tennessee Code Annotated § 29-26-121(a)(2)(E).

## III. Standard of Review

Our Supreme Court has elucidated the following regarding the standard of review applicable to a motion to dismiss a health care liability action based upon the plaintiff's noncompliance with Tennessee Code Annotated § 29-26-121:

The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance. If the defendant prevails and the complaint is dismissed, the plaintiff is entitled to an appeal of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13. If the plaintiff prevails, the defendant may pursue an interlocutory appeal under either Tennessee Rule of Appellate Procedure 9 or 10 using the same standards.

Because the trial court's denial of the Defendants' motion involves a question of law, our review is de novo with no presumption of correctness. *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010). The question of whether [the plaintiff] has demonstrated extraordinary cause that would

excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings. *Starr v. Hill*, 353 S.W.3d 478, 481-82 (Tenn. 2011). We review the trial court's decision to excuse compliance under an abuse of discretion standard. "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Wilson v. State*, 367 S.W.3d 229, 235 (Tenn. 2012) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011)). We examine the legal sufficiency of the complaint and do not consider the strength of the plaintiff's evidence; thus, all factual allegations in the complaint are accepted as true and construed in [favor] of the plaintiff. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011).

\* \* \*

The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008). To that end, we start with an examination of the statute's language, *Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 881 (Tenn. 2005), presuming that the legislature intended that each word be given full effect. *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *see also In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.") (citing *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn. 2005)). The construction of a statute is also a question of law which we review de novo without any presumption of correctness. *Lind*, 356 S.W.3d at 895.

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307-08 (Tenn. 2012).

In *Arden v. Kozawa*, 466 S.W.3d 758, 763 (Tenn. 2015), our Supreme Court clarified:

4

The content and affidavit requirements of Tennessee Code Annotated sections 29-26-121(a)(2), (a)(3), and (a)(4) are not mandatory, but directory, and can be achieved through substantial compliance. *See Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 520 (Tenn. 2014) (allowing substantial compliance with the affidavit requirement under Tennessee Code Annotated sections 29-26-121(a)(3)(B) and (a)(4)); *Stevens ex rel. Stevens v. Hickman Comm. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013) (allowing substantial compliance with the HIPAA form requirement under Tennessee Code Annotated section 29-26-121(a)(2)(E)). "[U]nless strict compliance with a notice content requirement 'is essential to avoid prejudicing an opposing litigant,' substantial compliance with a content requirement will suffice." *Thurmond*, 433 S.W.3d at 520 (quoting *Stevens*, 418 S.W.3d at 555).

IV. Requirements Concerning HIPAA-Compliant Medical Authorization

The Lawsons contend that the trial court erred by finding that they had failed to provide a medical authorization that was substantially compliant with HIPAA regulations. KDG asserts that the trial court properly dismissed the claim because the medical authorization provided by the Lawsons was insufficient to allow KDG to access relevant medical records to mount a defense. Upon careful review of the record and applicable authorities, we agree with KDG.

The requirements of Tennessee Code Annotated § 29-26-121(a)(2) serve the distinct purpose of providing defendants in a health care liability action with notice that "serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." *See Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013). This statute provides in pertinent part:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state. (Emphasis added.)

(2) The notice shall include:

(A) The full name and date of birth of the patient whose treatment is at issue;

5

(B)     The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C)     The name and address of the attorney sending the notice, if applicable;

(D)     A list of the name and address of all providers being sent a notice; and

(E)     A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. § 29-26-121(a)(2) (emphasis added).

KDG asserts that the trial court properly found that the Lawsons did not substantially comply with Tennessee Code Annotated § 29-26-121(a)(2)(E) because they left blank a core element of the authorization, specifically the section of the form provided for designating the name(s) of the person(s) or class of persons authorized to make the requested use or disclosure. The Code of Federal Regulations delineates the following "core elements," in relevant part, necessary to a HIPAA-compliant medical authorization:

(c)(1)  Core elements. A valid authorization under this section must contain at least the following elements:

(i)     A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.

(ii)    The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.

(iii)   The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

6

(iv)   A description of each purpose of the requested use or disclosure. . . .

(v)    An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. . . .

(vi)   Signature of the individual and date.  If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508 (c)(1) (emphasis added).

Our Supreme Court has described the purpose of Tennessee Code Annotated § 29-26-121(a)(2)(E) as follows:

[T]he purpose of Tenn. Code Ann. § 29-26-121(a)(2)(E) is not to provide defendants with notice of a potential claim.  Instead, Tenn. Code Ann. § 29-26-121(a)(2)(E) serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records.  Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records.  *See* 45 C.F.R. § 164.508(a)(1) ("a covered entity may not use or disclose protected health information without an authorization that is valid under this section").  Tenn. Code Ann. § 29-26-121(d)(1) creates a statutory entitlement to the records governed by § 29-26-121(a)(2)(E).  *See* Tenn. Code Ann. § 29-26-121(d)(1) ("All parties in an action covered by this section *shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice . . .*") (emphasis added).

*Stevens*, 418 S.W.3d at 555 (footnote omitted).

It is well established in Tennessee that the purpose of Tennessee Code Annotated § 29-26-121 can be achieved when the plaintiff substantially complies rather than strictly complies, so long as the defendant is not prejudiced due to the noncompliance.  *See Stevens*, 418 S.W.3d at 556 ("In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was

prejudiced by the plaintiff's noncompliance."). As our Supreme Court has further explained:

> *Myers* and *Stevens* thus instruct that: (1) providing potential defendants pre-suit notice of health care liability claims is the "essence" and "fundamental" purpose of the pre-suit notice requirement, *Myers*, 382 S.W.3d at 309; and (2) unless strict compliance with a notice content requirement "is essential to avoid prejudicing an opposing litigant," substantial compliance with a content requirement will suffice, *Stevens*, 418 S.W.3d at 555.

*Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 520 (Tenn. 2014). "Defendants are clearly prejudiced when unable, due to a form procedural error, to obtain medical records needed for their legal defense." *Hamilton v. Abercrombie Radiological Consultants, Inc.*, 487 S.W.3d 114, 120 (Tenn. Ct. App. 2014), *perm. app. denied* (Tenn. May 15, 2015).

In support of their assertion that they substantially complied with pre-suit notice content requirements, the Lawsons argue that the element missing from their medical authorization, designation of who was authorized to make the requested use or disclosure, was not necessary to KDG's ability to mount a defense because (1) KDG already had access to the medical record it generated when Mr. Lawson underwent treatment there on April 29, 2013; (2) it was one missing element, rather than several; (3) the document entitled "LIST OF HEALTH CARE PROVIDERS," which had been attached to the pre-suit notice, supplemented the HIPAA authorization to satisfy the missing element; (4) and the April 29, 2013 medical record did not document the incident or injury at issue. We will address each argument in turn.

First, the Lawsons argue that KDG was not prejudiced because it was already in possession of the only medical record relevant to the case at bar. However, "[i]n *Roberts*, this Court rejected the argument that because the pertinent medical records were already in the defendants' possession, this fact should result in a holding excusing full compliance with the statutory requirements." *See Hamilton*, 487 S.W.3d at 122 (citing *Roberts v. Prill*, No. E2013-02202-COA-R3-CV, 2014 WL 2921930, at *5 (Tenn. Ct. App. June 26, 2014)). Although "[i]n limited circumstances, HIPAA provides for the *use* or disclosure of medical records without specific authorization 'by the covered entity to defend itself in a legal action,'" "HIPAA generally provides that a covered entity may not '*use* or disclose protected health information without' valid authorization." *Roberts v. Prill*, No. E2013-02202-COA-R3-CV, 2014 WL 2921930, at *6 (Tenn. Ct. App. June 26, 2014) (quoting 45 C.F.R. § 164.508(a)(1)-(2)(i)(C)) (emphasis in *Roberts*).

The Lawsons in their complaint named two health care providers as defendants, KDG and Ms. Hageman. In a case involving one defendant to a health care liability action, our Supreme Court has recently held:

> [B]ased on the clear and unambiguous language of section 29-26-121(a)(2)(E), a plaintiff need not provide a HIPAA-compliant authorization when a single healthcare provider is given pre-suit notice of a healthcare liability claim. The authorization only allows a potential defendant to obtain the prospective plaintiff's medical records from any other healthcare provider also given notice and identified as a potential defendant in the pre-suit notice. This authorization requirement is consistent with section 29-26-121(d)(1), which specifies that all parties to a healthcare suit "shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice" and that the claimant complies with this requirement by providing a HIPAA-compliant medical authorization with pre-suit notice. *Id.* § 29-26-121(d)(1).

*Bray v. Khuri*, ___ S.W.3d, ___, ___, No. W2015-00397-SC-R11-CV, 2017 WL 2856697, at *2 (Tenn. July 5, 2017).

In holding that when the complaint is against a single health care provider, a HIPAA-compliant authorization is not needed, the *Bray* Court specifically distinguished such a situation from that in *Roberts*, 2014 WL 2921930, a health care liability action involving two named defendants. As the *Bray* Court explained in relevant part:

> In *Roberts*, the plaintiff filed a healthcare liability suit against the decedent's treating oncologist and the specialty healthcare group that employed the oncologist. . . . While *Roberts* and the case at bar are both healthcare liability suits concerning incomplete medical authorizations, they are factually distinguishable on a critical point: *Roberts* involved two defendants, whereas this case involves a single defendant.

*Bray*, ___ S.W.3d at ___, 2017 WL 2856697, at *3.

We determine the instant action to be on point with *Roberts* and therefore conclude that the one-defendant exception articulated in *Bray* does not apply in this action. The Lawsons were required to include a HIPAA-compliant medical authorization with their pre-suit notice to the original two Defendants. Moreover, because KDG's possession of the medical record from the date of the alleged injury did not operate as an authorization for KDG to disclose the record, we further determine the Lawsons' argument that KDG needed no such authorization to be unavailing.

9

Second, the Lawsons rely in part on our Supreme Court's decision in *Stevens*, noting that the Court affirmed the dismissal of the plaintiff's action in *Stevens* when the plaintiff omitted from her medical authorization "at least three of the six compliance requirements." *See Stevens*, 418 S.W.3d 547 at 556. The Lawsons argue that their situation is distinguishable because they omitted only one element. However, substantial compliance, as it is used in the context of pre-suit notice, does not refer solely to the number of satisfied elements, but rather to a degree of compliance that provides the defendant with the ability to access and use the medical records for the purpose of mounting a defense. *See id.* at 555 ("Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records."). The relevant inquiry, therefore, is whether the Lawsons failed to meet this threshold requirement, rather than how many core elements of the authorization were omitted.

The Lawsons argue that the instant action is comparable to the factual situation in *Hamilton*, 487 S.W.3d at 122, wherein this Court reversed the trial court's dismissal of the plaintiff's health care liability claim upon the determination that the plaintiffs' pre-suit medical authorization substantially complied with HIPAA regulations despite the omission of one core element, the expiration date or event relating to the individual or the purpose of the use or disclosure. *See* C.F.R. § 164.508(c)(1)(v). The *Hamilton* Court distinguished the facts at issue in its determination of substantial compliance from those in *Roberts* as follows in pertinent part:

> We read the *Roberts* holding in light of the particular shortcomings in the *Roberts* HIPAA form, which, as discussed above, were more substantive and substantial than the omitted date on the HIPAA form in the instant case. The relatively minor omission on Appellant's HIPAA form, coupled with the lack of evidence that Appellees were prejudiced or otherwise denied access to medical records as a result of the missing date, leads us to conclude that the trial court applied the *Stevens* holding too harshly in this case. While we concede that it is not good practice to omit any of the C.F.R. criteria from a HIPAA form, we conclude that the relatively minor shortcoming in the HIPAA form here is not fatal to the Appellant's cause of action. The Appellant substantially complied with § 29-26-121(a)(2)(E) because she provided Appellees sufficient notice to obtain the relevant medical records.

10

*Hamilton*, 487 S.W.3d at 122 (citing *Roberts*, 2014 WL 2921930, at \*5) (additional internal citations omitted).

In contrast to the omitted date at issue in *Hamilton*, the case at bar presents a situation in which the name or other specific identification of the person(s) or class of persons authorized to make the requested use or disclosure is missing from the Lawsons' pre-suit medical authorization. As KDG notes on appeal, health care providers presented with a medical authorization missing the identification of those authorized to release information would have no way of knowing that they were the providers for which the authorization was intended or that they were allowed to release medical records. Here, the authorization form provided by the Lawsons to KDG does not specify KDG as a provider allowed to release Mr. Lawson's medical records. Although the omission in this case includes only one of the omitted items at issue in *Roberts*, we determine that it is a necessary element to Defendants' legal authorization to use the pertinent medical records to mount a defense. *See Roberts*, 2014 WL 2921930, at \*5.

The Lawsons also rely on this Court's decision in *Hughes v. Henry Cty. Med. Ctr.*, No. W2014-01973-COA-R3-CV, 2015 WL 3562733 (Tenn. Ct. App. June 9, 2015). In *Hughes*, the pre-suit authorization provided to the defendant medical facility did not allow the facility to obtain and utilize records from the other defendant, a physician employed by the facility. *Id.* at \*1. This Court reversed the trial court's dismissal of the health care liability action in *Hughes* upon determining that the defendant physician had only treated the decedent at the defendant facility and possessed no medical records separate from the facility. *Id.* at \*5 (concluding that the goal of providing the defendant with the means necessary to evaluate the substantive merits of the plaintiff's claim was satisfied because the defendant facility "was authorized to use all of the patient's relevant medical records"). The Lawsons draw a parallel between *Hughes* and this case because of the employer-employee relationship between Defendants. However, unlike in *Hughes*, the defendant medical practice in this action, KDG, was not provided with authorization to utilize Mr. Lawson's medical records because the space on the authorization form for those entitled to disclose the records was left entirely blank. We therefore find the Lawsons' reliance on *Hughes* to be unavailing.

Third, the Lawsons assert that the document attached to their pre-suit notice, titled, "LIST OF HEALTH CARE PROVIDERS," can supplement the HIPAA authorization to satisfy the requirement provided in 45 C.F.R. § 164.508(c)(1)(ii). However, the Code of Federal Regulations, with certain exceptions not applicable here, specifically prohibits compound authorizations. *See* 45 C.F.R. § 164.508(b)(3) ("An authorization for use or disclosure of protected health information may not be combined with any other document to create a compound authorization . . . ."). This Court has previously "rejected the Plaintiffs' contention that the authorization forms were sufficient when considered

11

alongside the pre-suit notice letters that accompanied the forms." *See J.A.C. v. Methodist Healthcare Memphis Hosps.*, No. W2016-00024-COA-R3-CV, 2016 WL 6493229, at 8, (Nov. 2, 2016), *perm. app. denied* (Tenn. Mar. 9, 2017). Therefore, the Lawsons could not combine their attached list of health care providers with the medical authorization in order to achieve substantial compliance.

Finally, the Lawsons concede that although Mr. Lawson allegedly suffered the injury at issue while attempting to position himself on the examination table rather than while receiving medical care, this action is governed by the Health Care Liability Act. *See* Tenn. Code Ann. § 29-26-101 (Supp. 2016) (defining a health care liability action in pertinent part as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]"); *see, e.g., Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 888 (Tenn. Ct. App. 2016) (holding that an action involving the plaintiff's fall from an allegedly faulty stool after undergoing an x-ray was governed by the pre-suit notice requirements of the Health Care Liability Act). The Lawsons assert, however, that because the medical record generated by KDG on the day of treatment at issue does not address the incident involving the examination table, the medical record could be of no assistance to KDG in mounting a defense and therefore does not prejudice KDG. We disagree.

A one-page medical record concerning Mr. Lawson's April 29, 2015 visit to KDG is in the record on appeal as an exhibit attached to the Lawsons' response to Defendants' motion to dismiss. It is undisputed that this one-page record does not reference the incident involving the examination table. However, we have no way of knowing, nor did the trial court, how the medical record before us, which includes a description of Mr. Lawson's presenting his condition requiring dermatology treatment subsequent to suffering his purported injury allegedly caused by the table malfunction, would be evaluated by an expert witness or consultant. Moreover, because the medical authorization provided by the Lawsons failed to designate who would be authorized to make use of the medical record, KDG was foreclosed by HIPAA regulations from consulting with anyone to determine whether the record could aid in mounting a defense. *See Stevens*, 418 S.W.3d 547 at 555; *Roberts*, 2014 WL 2921930, at *5.

Upon thorough review, we conclude that KDG was prejudiced by the inadequacy of the Lawsons' pre-suit medical authorization because KDG would not be allowed to use Mr. Lawson's medical records to mount a defense. The trial court did not err in dismissing the Lawsons' health care liability action against KDG without prejudice based on the Lawsons' failure to provide medical authorization with their pre-suit notice that was substantially compliant with HIPAA regulations.

12

We note that inasmuch as the Lawsons failed to comply with pre-suit notice requirements, they did not obtain the 120-day extension of the statute of limitations when they filed their complaint. *See* Tenn. Code Ann. § 29-26-121(c); *Byrge v. Parkwest Med. Ctr.*, 442 S.W.3d 245, 251 (Tenn. Ct. App. 2014), *perm. app. denied* (Tenn. June 24, 2014) (affirming the trial court's dismissal of the plaintiff's health care liability action as untimely upon determining that "[a]s Plaintiff failed to give notice to Parkwest as required in the statute, and failed to demonstrate extraordinary cause to excuse his non-compliance, Plaintiff cannot and did not obtain the 120 day extension of the statute of limitations."). We therefore acknowledge that any future claims filed by the Lawsons in this matter would be time-barred. *See, e.g., Roberts*, 2014 WL 2921930, at *6 (affirming the trial court's dismissal of the plaintiff's action filed during the extension period without prejudice based on noncompliance with presuit notice requirements while acknowledging that any further claims in the matter would be time-barred).

## V. Conclusion

For the foregoing reasons, we affirm the trial court's judgment dismissing the Lawsons' health care liability claim against KDG without prejudice. We acknowledge, however, that any future claims filed by the Lawsons in this matter would be time-barred. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs below. The costs on appeal are assessed against the appellants, Tommy Lynn Lawson and Katrina Lawson.

_____
THOMAS R. FRIERSON, II, JUDGE