IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2023 Session

## WENDY C. CORAM ET AL. v. JIMMY C. BRASFIELD, M.D. ET AL.

**Appeal from the Circuit Court for Sullivan County**
No. C16236M          John S. McLellan, III, Judge

———————————————————

**No. E2022-01619-COA-R3-CV**

———————————————————

Plaintiffs filed a health care liability action against several defendants. Following a hearing on the defendants' motions to dismiss, the trial court determined that the plaintiffs failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E) and that the action was untimely. The plaintiffs appealed to this Court and, following our review, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

R. Wayne Culbertson and Joseph W. McMurray, Kingsport, Tennessee, for the appellants, Wendy C. Coram and Robert L. Coram.

Russell W. Adkins, Kingsport, Tennessee, for the appellees, Jimmy C. Brasfield, M.D., and Mark Steven Mehlferber, PAC.

Frank H. Anderson, Jr., Johnson City, Tennessee, for the appellees, Ballad Health and Bristol Regional Medical Center.

Jimmie C. Miller and Meredith B. Humbert, Kingsport, Tennessee, for the appellees, Ralph E. Fig, Jr., PAC; Hetvie Kiritkumar Joshi, M.D.; Ballad Health Medical Associates Family Medicine; and Michael K. Patrick, M.D.

## OPINION

### BACKGROUND

On October 21, 2020, Jimmy C. Brasfield ("Dr. Brasfield") of American Physician Partners at Bristol Regional Medical Center ("Bristol Regional") performed back surgery on Wendy Coram. According to her complaint, Mrs. Coram complained to Dr. Brasfield about pain, weakness, and paresthesia during a follow-up appointment on October 22, 2020. On October 24, 2020, Mrs. Coram presented to the Bristol Regional emergency room with post-surgical complications. By October 25, 2020, she was complaining of severe pain in, and an inability to move, her right leg. Dr. Brasfield ordered an MRI at approximately 5:07 p.m. which, according to the complaint, showed bleeding. Mrs. Coram underwent a second surgery around 8:00 p.m. on October 25, 2020.

On September 7, 2021, Mrs. Coram and her husband, Robert Coram (together, "Plaintiffs" or "Appellants"), sent a pre-suit notice via certified mail to several of Mrs. Coram's medical providers: Dr. Brasfield; Mark Mehlferber, PAC; Ralph Fig, Jr., PAC; American Physician Partners, PSO, LLC[1]; Hetvie Kiritkumar Joshi, MD; Ballad Health; Bristol Regional; Ballad Health Medical Associates Family Medicine; and Michael K. Patrick, MD (together, "Defendants" or "Appellees"). Attached to the pre-suit notice was a HIPAA[2] authorization. The authorization provides that Mrs. Coram's birth year is 1971, when in fact she was born in 1977. It is undisputed that Mrs. Coram's information is correct in the pre-suit notice form to which the HIPAA authorization is attached. On October 29, 2021, Plaintiffs' counsel sent a letter via certified mail to each of the defendant medical providers with a corrected HIPAA authorization attached.

Plaintiffs filed their complaint against Defendants in the Circuit Court for Sullivan County ("trial court") on December 21, 2021. Plaintiffs alleged that Defendants failed to recognize and/or perform to the applicable standard of care and that Defendants' negligent conduct caused Mrs. Coram to suffer, *inter alia*, partial paralysis and severe pain in her lumbar spine and right leg. Mr. Coram alleged a claim for loss of consortium.

On February 14, 2022, Dr. Brasfield and Mr. Mehlferber filed a motion to dismiss the claims against them, arguing that the erroneous birth year on Mrs. Coram's HIPAA authorization constituted a failure to comply with the pre-suit notice requirements of

---

[1] Plaintiffs later voluntarily dismissed American Physician Partners, PSO, LLC, pursuant to Tennessee Rule of Civil Procedure 41.01.

[2] "HIPAA is an acronym for the Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104–191, 110 Stat.1936 (codified throughout 18 U.S.C., 29 U.S.C., 42 U.S.C., and in 45 C.F.R. §§ 160 & 164) (2013)." *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 553 n.4 (Tenn. 2013).

Tennessee Code Annotated section 29-26-121(a)(2)(E). They also argued that the October 29, 2021 letter and corrected HIPAA authorization could not remedy the deficiency in the pre-suit notice because (1) it was sent after the one-year statute of limitations ran, and (2) it was sent less than sixty days before Plaintiffs filed their complaint. The remaining defendants also filed a motion to dismiss on February 24, 2022, raising largely the same arguments.

The trial court held a hearing in August of 2022,[3] and another hearing on September 15, 2022. At the September 15, 2022 hearing, the trial court announced that it was granting Defendants' motions to dismiss. The trial court entered its final order on October 7, 2022. In relevant part, the order provides:

> The Court finds that the Plaintiffs' original notice of intent included a defective medical authorization. Due to the Plaintiffs' failure to substantially comply with the requirements of Tennessee Code Annotated § 29-26-121(a)(2)(E), the one-year statute of limitations applicable to the Plaintiffs' health care liability action was not extended, and thus, ran prior to the filing of Plaintiff's original Complaint on December 21, 2021 inasmuch as the alleged acts of negligence occurred in October of 2020. Extraordinary cause does not exist to excuse the Plaintiffs' noncompliance with the requirements of Tennessee Code Annotated § 29-26-121. The second notice of intent was provided by the Plaintiffs after the statute of limitations had run, and therefore, it was untimely. Pursuant to the Court of Appeals' holding in *J.A.C. by & through Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502, 520 (Tenn. Ct. App. 2016), a notice of intent is not a pleading, and consequently, Tennessee Rule of Civil Procedure 15 does not apply. Thus, the second notice of intent does not relate back to the original notice of intent.

Plaintiffs filed a timely notice of appeal to this Court.

### ISSUES

On appeal, Plaintiffs assert that the trial court erred in concluding that their pre-suit notice did not substantially comply with Tennessee Code Annotated section 29-26-121 due to a clerical error. Defendants raise no issues in their posture as appellees.

---

[3] The transcript states that the hearing was held on August 22, 2022. The parties seem to disagree about what date the hearing was actually held; however, the discrepancy is not important to our analysis.

## STANDARD OF REVIEW

The trial court dismissed Plaintiffs' complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6). *See Hayward v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 680 S.W.3d 252, 259 (Tenn. Ct. App. 2023) ("[T]he proper avenue to challenge a plaintiff's compliance with the pre-suit notice requirement in [Tennessee Code Annotated] Section [29-26-]121 is by a Tenn. R. Civ. P. 12.02(6) motion to dismiss."). "A trial court's grant of a motion to dismiss, filed pursuant to Tenn. R. Civ. P. 12.02(6), is a question of law, which we review *de novo* with no presumption of correctness. *Id.* (citing *Ellithorpe v. Weismark*, 479 S.W.3d 818, 824 (Tenn. 2015)).

## DISCUSSION

The trial court determined that Plaintiffs' claims were untimely. "The statute of limitations in health care liability actions shall be one (1) year as set forth in § 28-3-104." Tenn. Code Ann. § 29-26-116(a)(1). Before a plaintiff may file a complaint for medical malpractice, however, he or she "must give written notice of the claim to each health care provider that will be named as a defendant in the lawsuit." *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 331 (Tenn. 2020). When pre-suit notice is properly provided, "the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider." Tenn. Code Ann. § 29-26-121(c).

The purpose of pre-suit notice is to afford a potential defendant in a health care liability action timely notice to allow the defendant to investigate the merits of the claim and pursue settlement negotiations prior to the lawsuit being filed. *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 86 (Tenn. 2018). "Pre-suit notice benefits the parties by promoting early resolution of claims, which also serves the interest of judicial economy." *Id.* Pre-suit notice is governed by Tennessee Code Annotated section 29-26-121, which provides in pertinent part:

> (a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.
>
> (2)     The notice shall include:
>
> (A)   The full name and date of birth of the patient whose treatment is at issue;

(B)  The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C)  The name and address of the attorney sending the notice[];

(D)  A list of the name and address of all providers being sent a notice; and

(E)  A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. § 29-26-121(a).  The first three content requirements of section -121(a)(2) "facilitate early resolution of healthcare liability claims by requiring plaintiffs to advise defendants who the plaintiff is, how to reach him or her, and how to contact his or her attorney." *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 554 (Tenn. 2013).  Section 29-26-121(a)(2)(E), which deals with HIPAA authorizations, "serve[s] an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records." *Stevens*, 418 S.W.3d at 554.  "Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Id.* at 555 (citing 45 C.F.R. § 164.508(a)(1)).

The "statutory requirement of timely, written pre-suit notice is mandatory and may be satisfied only by strict compliance[.]" *Martin*, 600 S.W.3d at 331.  On the other hand, "[t]he statutory content requirements are directory and may be satisfied by substantial compliance." *Id.*  Accordingly, "plaintiffs cannot satisfy [section] 29-26-121(a)(2)(E) by simply notifying defendants that a healthcare liability claim may be forthcoming." *Stevens*, 418 S.W.3d at 555.  In *Stevens*, our Supreme Court elaborated on how a plaintiff "substantially satisfie[s] the requirements of [section] 29-26-121(a)(2)(E)":

[A] plaintiff "shall" include in the pre-suit notice a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Federal regulations state that a HIPAA compliant authorization must include the following six elements:

(i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.

(ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.

(iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

(iv) A description of each purpose of the requested use or disclosure....

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure....

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided. 45 C.F.R. § 164.508(c)(1).

\*       \*       \*

In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance. Not every non-compliant HIPAA medical authorization will result in prejudice.

*Id.* at 555–56.

More recently, our Supreme Court expounded on the concept of "prejudice," explaining that

prejudice is not a separate and independent analytical element; rather, as *Stevens* explained, prejudice is a consideration relevant to determining whether a plaintiff has substantially complied. *Stevens*, 418 S.W.3d at 556 (stating that whether a plaintiff "has substantially complied with a statutory [content] requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance"). Prejudice, or the absence of prejudice, is especially relevant to evaluating the extent and significance of the plaintiff's noncompliance. If a plaintiff's noncompliance with Section

- 6 -

121 frustrates or interferes with the purposes of Section 121 or prevents the defendant from receiving a benefit Section 121 confers, then the plaintiff likely has not substantially complied with Section 121. *See id.* at 563 (noting that the focus should be "on the extent of the shortcomings and whether those shortcomings have frustrated the purpose of the statute or caused prejudice to the adversary party"). On the other hand, if the plaintiff's noncompliance neither frustrates or interferes with the purposes of Section 121 nor prevents a defendant from receiving a benefit the statute confers, then a court is more likely to determine that the plaintiff has substantially complied.

*Martin*, 600 S.W.3d at 333–34.

In the wake of both *Stevens* and *Martin*, this Court tends to find that a plaintiff has not substantially complied with section 29-26-121(a)(2)(E) when a medical authorization lacks one or more of the core elements provided in 45 C.F.R. § 164.508(c)(1). *See, e.g.*, *Vandergriff v. Erlanger Health Sys.*, No. E2022-00706-COA-R3-CV, 2023 WL 8257876, at \*5 (Tenn. Ct. App. Nov. 29, 2023) (authorization not substantially compliant where "the form did not provide any authorization for the [d]efendants to obtain medical records from any other providers, as required by the statute"); *Woods v. Arthur*, No. W2019-01936-COA-R3-CV, 2021 WL 1110920, at \*4 (Tenn. Ct. App. Mar. 23, 2021) (authorization not substantially compliant because it lacked a description of the purpose for which the records could be disclosed and used); *Carrasco v. North Surgery Ctr., LP*, No. W2019-00558-COA-R3-CV, 2020 WL 2781588, at \*3 (Tenn. Ct. App. May 28, 2020) (trial court found and plaintiff conceded on appeal that initial authorizations were defective because, *inter alia*, they contained several blanks); *Williams v. Gateway Med. Ctr.*, No. M2018-00939-COA-R3-CV, 2019 WL 1754692, at \*6 (Tenn. Ct. App. Apr. 18, 2019) (failure to include a description of the protected information to be used or disclosed fatal to authorization). Moreover, "'[p]laintiffs who sent imperfect medical authorizations have been found substantially compliant in very few instances.'" *Woods*, 2021 WL 1110920, at \*4 (quoting *Martin*, 600 S.W.3d at 345 (Holly Kirby, J., concurring in part and dissenting in part)); *but see Hamilton v. Abercrombie Radiological Consultants, Inc.*, 487 S.W.3d 114, 120 (Tenn. Ct. App. 2014), *perm. app. denied* (Tenn. May 15, 2015) (authorization was imperfect but substantially complete where "the only allegation of error in the HIPAA form [was] the missing date that is required under C.F.R. § 164.508(c)(1)(vi)").

Here, we conclude that Plaintiffs' HIPAA authorization substantially complied with Tennessee Code Annotated section 29-26-121(a)(2)(E). Defendants concede that the authorization contains all of the core elements required by 45 C.F.R. § 164.508. They also concede that Mrs. Coram's birth year is correct on her pre-suit notice letter and that there is no requirement that the HIPAA authorization reflect her birth year. Indeed, the parties agree that a HIPAA authorization containing all of the core elements required by 45 C.F.R. § 164.508, but not including the patient's date of birth, would be compliant. Defendants

assert, however, that because Plaintiffs chose to include the birth year and then used the wrong one, Plaintiffs provided false, material information fatal to the authorization. This argument is based on 45 C.F.R § 164.508(b)(2)(v), which provides that an authorization is defective when, among other instances, "[a]ny material information in the authorization is known by the covered entity to be false." Defendants argue in their brief that

> [a]lthough an individual's date of birth is not included among the "core elements" listed by 45 CFR 164.508(c)(1), it is nonetheless material information for an individual. By virtue of the [Plaintiffs'] decision to include Wendy Coram's date of birth on the medical authorization, they included information that was material to the identity of Wendy Coram. Due to the recognition by the [Defendants] that the date of birth provided for Wendy Coram was false, the [Defendant] medical providers were unable to use the defective medical authorization to exchange medical records pre-suit, which is the purpose of Tennessee Code Annotated § 29-26-121.

Respectfully, we disagree. The applicable regulations do not define "material." Defendants' argument assumes that "material" as used in the above regulation has the narrow meaning of being "material to the identity of" the plaintiff. Nonetheless, Defendants cite no case law explaining the meaning of "material" in this context or supporting their argument that Mrs. Coram's birth year is "material" as contemplated by the regulation. Nor did our research reveal any such cases. Moreover, the authorization contains correct identifying information for Mrs. Coram, such as her name. Inasmuch as Defendants could identify Mrs. Coram from the authorization notwithstanding the birth year, and they admit the information need not be included in the authorization at all, we disagree that Mrs. Coram's birth year is "material information" under the circumstances.

Further, this case is distinguishable from previous cases in which a HIPAA authorization is deemed not in substantial compliance with section 29-26-121(a)(2)(E). In *Stevens*, for example, the authorization at issue "was woefully deficient[,]" and "[t]he errors and omissions were numerous and significant." 418 S.W.3d at 556. Indeed, in most cases in which a HIPAA authorization is deemed defective, at least one core element is either missing or incorrect. *See Vandergriff*, 2023 WL 8257876, at *5; *Woods*, 2021 WL 1110920, at *6; *Carrasco*, 2020 WL 2781588, at *3; *Williams*, 2019 WL 1754692, at *6. While "substantial compliance [ ] as it is used in the context of pre-suit notice [ ] does not refer solely to the number of satisfied elements," *Lawson v. Knoxville Dermatology Grp., P.C.*, 544 S.W.3d 704, 711 (Tenn. Ct. App. 2017), this trend is nonetheless notable. *See Vandergriff*, 2023 WL 8257876, at *4 ("Under federal law, a medical authorization is not HIPAA compliant if '[t]he authorization has not been filled out completely, with respect to' a core element." (quoting *Martin*, 600 S.W.3d at 334)).

In this case, "the extent and significance of the plaintiff's errors and omissions" are minor. *Stevens*, 418 S.W.3d at 556. The authorization contains the requisite core elements, and Defendants point to no precedent suggesting that the small error at issue frustrates or interferes with the purposes of section 29-26-121(a)(2)(E). *See id.* Our Supreme Court has stated that "[n]ot every non-compliant HIPAA medical authorization will result in prejudice." *Id.* That directive rings hollow should this Court determine, without any supporting legal authority, that a clerical error unrelated to the core elements renders an authorization defective.

The trial court erred in determining that Plaintiffs did not substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E). Accordingly, the trial court also erred in concluding that Plaintiffs' action was untimely and in dismissing same. We therefore reverse the trial court's decision.

## CONCLUSION

The judgment of the Circuit Court for Sullivan County is reversed. This case is remanded for proceedings consistent with this opinion. Costs on appeal are assessed to the Defendants, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE