IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 20, 2023 Session

## LAURA S. CHRISTIE ET AL. v. BAPTIST MEMORIAL HOSPITAL d/b/a BAPTIST MEMORIAL HOSPITAL FOR WOMEN ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-0502-21     Jerry Stokes, Judge**

_____

### No. W2022-01296-COA-R3-CV
_____

Plaintiffs appeal the dismissal of their health care liability claims against a hospital and two doctors who treated their daughter on the day of her birth and tragic death. The trial court reluctantly ruled that the plaintiffs failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E) and dismissed the claims as untimely. We conclude that the plaintiffs met their burden to show substantial compliance with section 29-26-121(a)(2)(E) as to the defendant hospital, but not the defendant doctors. We therefore affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part; Affirmed in Part and Remanded**

J. STEVEN STAFFORD, P.J., W.S. delivered the opinion of the court, in which CARMA DENNIS MCGEE and JEFFREY USMAN, JJ., joined.

Everett B. Gibson and Emily D. Johns, Memphis, Tennessee, for the appellants, Laura S. Christie and Kevin P. Christie.

James L. Kirby and Karen S. Koplon, Memphis, Tennessee, for the appellee, Baptist Memorial Hospital d/b/a Baptist Memorial Hospital for Women.

Darrell E. Baker Jr., and Deborah Whitt, Memphis, Tennessee, for the appellees, Esmond L. Arrindell, Sr., M.D., and Esmond L. Arrindell, Jr., M.D.

## OPINION

# I. Factual and Procedural Background

The facts in this case are largely taken from the complaint and are undisputed for purposes of this appeal. On November 7, 2019, Plaintiff/Appellant Laura S. Christie was admitted to Defendant/Appellee Baptist Memorial Hospital d/b/a Baptist Memorial Hospital for Women ("Baptist") for the birth of her daughter, Elizabeth Ann Christie ("Elizabeth"). Because Elizabeth was in the breech position, Baptist engaged Defendant/Appellee Dr. Esmond L. Arrindell, Jr. ("Dr. Arrindell, Jr."), a neonatologist, to be present during the delivery along with Mrs. Christie's obstetrician.

Elizabeth was born on November 7, 2019, at 10:22 a.m. Although Elizabeth had some response problems, Mrs. Christie and Elizabeth's father, Plaintiff/Appellant Kevin P. Christie (together with Mrs. Christie, "Appellants"),[1] were assured Elizabeth was normal. Unbeknownst to Appellants, however, after Elizabeth was admitted to the nursery, she was moved to the neonatal intensive care unit ("NICU") to receive treatment by a respiratory therapist for low oxygen saturation.

Mrs. Christie eventually found Elizabeth in the NICU after she went looking for her. Elizabeth appeared at that time to be in distress, but no physician was present. When Mrs. Christie insisted that a physician be called, Defendant/Appellee Dr. Esmond L. Arrindell, Sr. ("Dr. Arrindell, Sr.," and together with Dr. Arrindell Jr., "the Defendant Doctors") arrived and stayed with Elizabeth until she died at 9:07 p.m. the day of her birth due to respiratory failure.

On August 7, 2020, Appellants sent separate pre-suit notice letters to Baptist, Dr. Arrindell, Jr., and Dr. Arrindell, Sr. (collectively, "Appellees"). The Health Insurance Portability and Accountability Act ("HIPAA") medical authorizations attached to each pre-suit notice letter provided only that Appellants' counsel was the designated party given authority to access the applicable medical records.[2] Appellants thereafter filed suit against Appellees on February 5, 2021, in the Shelby County Circuit Court ("the trial court"). Therein, they asserted that their daughter's life would have been saved if Appellees had transferred Elizabeth to LeBonheur Children's Hospital, where she could have been placed on Extracorporeal Membrane Oxygenation ("ECMO") treatment. According to Appellants, the recognized standard of care required the transfer of a child in respiratory distress, like Elizabeth, to a facility that could administer ECMO treatment.

---

[1] During the pendency of this appeal, Baptist filed a suggestion of death in the trial court indicating that Mrs. Christie passed away in April 2022. The appellants' brief is filed in the names of both Mrs. Christie and Mr. Christie, Appellees refer to Mrs. Christie and Mr. Christie as "Appellants," and no party has raised an issue concerning the prosecution of this appeal in her name. We therefore follow the parties' leads in framing this appeal as being prosecuted by Appellants.

[2] Specifically, the authorizations stated that medical records could be disclosed to "Everett Gibson and any other attorney or staff member of GIBSON PERRYMAN LAW FIRM."

On February 26, 2021, Baptist filed a motion to dismiss on the basis that the HIPAA authorization was defective, that the pre-suit notice did not extend the applicable statute of limitations, and that the claim was time-barred as a result. The Defendant Doctors filed a similar motion to dismiss on March 4, 2021.

Appellants did not dispute that the authorizations were defective, but argued that Appellees were not prejudiced by the defect. The parties thereafter agreed to engage in limited discovery on the issue of whether Appellees suffered prejudice. Following a hearing to define the scope of the discovery allowed, the Defendant Doctors and a representative of Baptist were deposed. Both of the Defendant Doctors confirmed that they had access to any records Baptist held concerning Elizabeth through an electronic database. Dr. Arrindell, Jr. stated, however, that those records could be used only for patient care. Dr. Arrindell, Sr. likewise confirmed that he had access to the records "during the care of [his] patients." Baptist's corporate representative agreed that the Defendant Doctors could not use their records for any purpose beyond patient care, but that "[a]s a named party to litigation," Baptist would have "full" access to Elizabeth's Baptist chart held in an electronic database "to recollect and to look at the information."

The motions to dismiss were eventually heard on August 11, 2022. At the hearing, the trial court orally ruled that it would grant Appellees' motion, but that it did so reluctantly. On August 11, 2022, the trial court entered an order ruling that Appellants' medical authorizations were defective and that Appellees were prejudiced because "they were not able to obtain the medical records of [Elizabeth] from all of the providers who were sent notice pursuant to Tenn. Code Ann. § 29-26-121 and were, therefore, unable to investigate the potential claim, assess its merit, and determine their positions regarding pre-suit settlement." The trial court therefore ruled that Appellants failed to substantially comply with section 29-26-121 and did not receive the 120-day extension of the statute of limitations. Without the benefit of that extension, Appellants' claim was filed outside the applicable statute of limitations. Consequently, the trial court dismissed Appellants' claim, and this appeal followed.

## II. ISSUES PRESENTED

Appellants raise three issues in this appeal, which are taken from their brief:

1. Whether the trial court erred in determining that there was legal prejudice to Appellees.
2. Whether the trial court erred in holding that Appellants did not substantially comply with Tenn. Code Ann. § 29-26-121, when the medical record for the [Child] consisted in its entirety of the Baptist [] chart for June 7, 2019, where death occurred within less than eleven hours from birth and all medical

treatment occurred entirely on the Baptist [] premises; and

3. Whether the trial court erred in determining that none of the three Appellees had the ability to access the Baptist [] chart in its entirety without a HIPAA Compliant Authorization.

As we perceive it, this case involves a single issue: Whether the trial court correctly dismissed Appellants' complaint based on Appellants' failure to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E) and the expiration of the statute of limitations.

## III. Discussion

The trial court dismissed the claims against all Appellees on the basis of Appellants' failure to substantially comply with Tennessee Code Annotated section 29-26-121. According to the Tennessee Supreme Court,

> The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 [] is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance. If the defendant prevails and the complaint is dismissed, the plaintiff is entitled to an appeal of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13.

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). Because the trial court's decision on the motion "involves a question of law, our review is de novo with no presumption of correctness." *Id.* (citing *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010)).

Appellants contend that the they relied on matters outside the pleadings, converting Appellees' motions to dismiss into motions for summary judgment. *See* Tenn. R. Civ. P. 12.02 (stating that a motion to dismiss is converted to a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court"). In

- 4 -

that case, we would still review the grant of Appellees' motions under a de novo standard with no presumption of correctness. *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 330 (Tenn. 2020). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Tenn. R. Civ. P. 56.04). We view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Parveen v. ACG S. Ins. Agency, LLC*, 613 S.W.3d 113, 115 n.2 (Tenn. 2020).

In Tennessee, any person raising a health care liability claim must give written notice to potential defendants before filing a complaint under the Tennessee Health Care Liability Act ("THCLA"):

> Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

Tenn. Code Ann. § 29-26-121(a)(1). Pursuant to the statute, the pre-suit notice must include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E). Federal regulations state that the following are requirements for a valid HIPAA authorization:

> (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
> (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
> (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.
> (iv) A description of each purpose of the requested use or disclosure. . . .
> (v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. . . .
> (vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1). These elements are mandatory for a fully compliant HIPAA authorization. *See Hamilton v. Abercrombie Radiological Consultants, Inc.*, 487 S.W.3d

114, 119 (Tenn. Ct. App. 2014) (noting that the regulation states that the form "must contain" the core elements listed (quoting 45 C.F.R. § 164.508(c)(1))); see also 45 C.F.R. § 164.508(b)(2) (" An authorization is not valid, if the document submitted has any of the following defects: . . . (ii) The authorization has not been filled out completely, with respect to an element described by paragraph (c) of this section, if applicable[.]").

The Tennessee Supreme Court has held, however, that minor deviations will not always defeat the purpose of the disclosure requirement contained in the THCLA. *See generally **Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.***, 418 S.W.3d 547 (Tenn. 2013). Instead, the Tennessee Supreme Court explained that

> "[n]on-substantive errors and omissions" and "[a] plaintiff's less-than-perfect compliance" with [subsection] 29-26-121(a)(2)(E) will "not derail a healthcare liability claim" so long as the medical authorization provided is "sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." Thus, we held that "a plaintiff must substantially comply, rather than strictly comply, with the requirement[ ] of [subsection] 29-26-121(a)(2)(E)."

***Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC***, 433 S.W.3d 512, 519–20 (Tenn. 2014) (alterations in original) (internal citation omitted) (quoting ***Stevens***, 418 S.W.3d at 555). "In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." ***Stevens***, 418 S.W.3d at 556. However, "[b]ecause HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." ***Id.*** at 555 (citing 45 C.F.R. § 164.508(a)(1)). Thus, as this Court has explained,

> In sum, there is no bright line rule that determines whether a party has substantially complied with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E). However, in order to substantially comply with the statute, a plaintiff must provide a defendant with a HIPAA compliant medical authorization form that is sufficient to allow the defendant to obtain the plaintiff's medical records from the other providers being sent the notice. In this context, substantial compliance requires a degree of compliance that provides the defendant with the ability to access and use the medical records for the purpose of mounting a defense.

***Wenzler v. Xiao Yu***, No. W2018-00369-COA-R3-CV, 2018 WL 6077847, at *5 (Tenn. Ct.

App. Nov. 20, 2018) (citations, quotation marks, and brackets omitted).

Appellants do not dispute that the medical authorizations were defective in this case, in that they did not permit each defendant to receive medical records "from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E). The dispositive question in determining whether Appellants' authorizations were substantially compliant with the relevant requirements, therefore, is whether there was any prejudice to Appellees' ability to access and use Elizabeth's medical records. *See Martin*, 600 S.W.3d at 334 (citing *Stevens*, 418 S.W.3d at 555) ("[I]f the plaintiff's noncompliance neither frustrates or interferes with the purposes of Section 121 nor prevents a defendant from receiving a benefit the statute confers, then a court is more likely to determine that the plaintiff has substantially complied.").

In order to show substantial compliance and a lack of prejudice, Appellants argue that Appellees should be treated as a single provider in this case, under the first rule outlined in *Bray v. Khuri*, 523 S.W.3d 619, 620 (Tenn. 2017), which holds that no pre-suit HIPAA authorization is required when only a single defendant is given pre-suit notice.[3] While conceding that the Defendant Doctors are merely independent contractors of Baptist, Appellants contend that they should nevertheless be treated as a single entity with Baptist due to the short life of Elizabeth and the fact that, as they allege, Elizabeth's entire medical record is held by Baptist.[4] Thus, Appellants assert, "[n]one of the Appellees need medical authorization to access the chart in this case."

Respectfully, we disagree. Importantly, Appellants have not cited a single case in which a health care organization and its individual health care providers have been treated as a single entity for purposes of the *Bray* single provider exception. The single provider rule in *Bray* is based on the simple fact that Tennessee Code Annotated section 29-26-121(a)(2)(E) requires that a HIPAA compliant medical authorization be sent in order to give the provider receiving notice the ability to obtain records "from each other provider being sent a notice." When only one provider is sued, there is no other medical provider being sent a notice. Thus, the single provider exception is narrow and limited to the case where only a single provider is named as a defendant.

---

[3] We discuss the second *Bray* rule, the health care operations exception, *infra*. This Court has delineated the two rules thus:

> (1) "a plaintiff need not provide a HIPAA-compliant authorization when a single healthcare provider is given pre-suit notice of a healthcare liability claim," and (2) a health care provider may use or disclose protected health information for its health care operations and does not need to obtain a medical authorization in order "to use a patient's medical records in [its] possession and consult with counsel to evaluate the merits of a potential claim."

*Wenzler*, 2018 WL 6077847, at *8 (quoting *Bray*, 523 S.W.3d at 622–23).

[4] This issue is discussed more fully, *infra*.

As a result, we have repeatedly declined to apply the single provider exception even when the two defendants were in an employer-employee relationship, much less the independent contractor relationship at issue here. *See Wenzler*, 2018 WL 6077847, at *8 (holding that a claim against a dentistry practice and dentist employed by the practice did not fall within the *Bray* single provider exception); *Lawson v. Knoxville Dermatology Grp., P.C.*, 544 S.W.3d 704, 711 (Tenn. Ct. App. 2017) (holding that a claim against a dermatology practice and a physician's assistant employed by the practice did not fall within the *Bray* single provider exception); *see also Bray*, 523 S.W.3d at 623 (citing *Roberts v. Prill*, No. E2013-02202-COA-R3-CV, 2014 WL 2921930, at *1 (Tenn. Ct. App. June 26, 2014)) (noting that *Roberts* would not have fallen within the single provider exception because the claim was distinguishable as it was filed against two defendants, even though the defendants were employer and employee); *cf. Hayward v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. E2022-00488-COA-R3-CV, 2023 WL 3119468, at *8 (Tenn. Ct. App. Apr. 27, 2023) (appearing to conclude that the single provider exception from *Bray* does not apply to a case involving claims against a hospital and a physician who practiced there, but holding that the second exception outlined in *Bray* could apply, as discussed *infra*), *perm. app. denied* (Tenn. Oct. 13, 2023).

Moreover, this application of the first *Bray* exception holds true even where it is undisputed that only one of two defendants holds medical records related to the patient, as in *Wenzler*, 2018 WL 6077847, at *8. In that case, the plaintiff sued two parties: a dentist and the dentistry practice that employed him. *Id.* at *1. The defendants thereafter filed a motion to dismiss, arguing that the plaintiff failed to provide HIPAA compliant medical authorizations with her pre-suit notice letters. However, the defendants conceded that the dentist had no medical records in his possession; the only records were in the possession of the dentistry practice. *Id.* at *8. Thus, the plaintiff argued that the case "in essence" involved only a single health care provider. *Id.* at *2.

But the *Wenzler* panel concluded that the plaintiff had not provided pre-suit notice to only a single medical provider; the plaintiff had provided pre-suit notice to two health care providers, regardless of the fact that one employed the other. *Id.* (citing *Lawson*, 544 S.W.3d at 710). So the first rule in *Bray* was not applicable. Likewise, we cannot conclude that Baptist and the Defendant Doctors should be treated as a single entity for purposes of this case even though all of the medical records from Elizabeth's short and tragic life may be held by Baptist and accessible by the Defendant Doctors.

Of course, as noted above, the single provider rule is not the only exception to the requirement of a HIPAA compliant medical authorization outlined by our high court in *Bray*. Rather, the Tennessee Supreme Court has explained that as an alternative to the single provider rule, "the health care operations" exception permits a provider to use a patient's protected health care records in the provider's own possession to consult with legal counsel in order to evaluate the merits of a potential claim. *Bray*, 523 S.W.3d at 623

("HIPAA does not require [the defendant doctor] to obtain a medical authorization to use a patient's medical records in his possession and consult with counsel to evaluate the merits of a potential claim."). Appellants cite the portion of **Bray** that discusses this exception in their brief and suggest that this exception applies because Elizabeth's entire medical history was contained in Baptist's medical chart. And because both the Defendant Doctors and Baptist had access to the chart, Appellant asserts that neither was prejudiced by the noncompliant HIPAA authorization.

In order to evaluate this issue, we must first discuss the records that exist in this case. Throughout the trial court proceedings and on appeal, Appellants have insisted that all medical records for the child are held solely by Baptist, citing the fact that Elizabeth's entire life was spent in Baptist's facility and the fact that Baptists' medical records span from her birth to her unfortunate death. Counsel for the Defendant Doctors explicitly conceded at oral argument that they held no medical records pertaining to Elizabeth; their depositions confirmed that they had no offices outside Baptist where they performed patient care of any kind. In the face of this concession, counsel for Baptist did not dispute that Baptist was the only health care provider to hold any records pertaining to Elizabeth during oral argument. Moreover, during her deposition, Baptist's corporate representative conceded that Baptist had "full" access to Elizabeth's medical records. And those medical records clearly reflect that she never left Baptist's custody and care during her entire life. Thus, the records themselves suggest that Baptist's records were the only records that pertained to Elizabeth's care. As such, taking the proof in the light most favorable to Appellants, we must conclude that Appellants met their burden at the summary judgment stage to demonstrate that all records relevant to this case were held by Baptist. *See* **Martin**, 600 S.W.3d 322, 335 (holding that the plaintiff bears the burden of demonstrating a lack of prejudice).

In our view, this case therefore once again closely resembles **Wenzler**. After determining that the dentistry practice and dentist could not be considered a single entity for purposes of the first rule outlined in **Bray**, the **Wenzler** panel next considered whether the defendants were prejudiced by the noncompliant medical authorization through the lens of the health care operations exception. 2018 WL 6077847, at *7–8. First, we explained that under that exception, HIPAA permits "a health care provider to use or disclose protected health information in its possession for its own health care operations." *Id.* at *8 (quoting **Bray**, 523 S.W.3d at 622). We also noted that "health care operations" includes "[c]onducting or arranging for . . . legal services[.]" *Id.* at *7 (final alteration added) (emphasis omitted) (quoting **Bray**, 523 S.W.3d at 622 (quoting 45 C.F.R. § 164.501)). We further explained that "the website maintained by the United States Department of Health and Human Services indicated that a health care provider may use or disclose protected health information with its lawyer for litigation." *Id.* (citing **Bray**, 523 S.W.3d at 622–23). We therefore concluded that "it was not necessary for [the dentistry practice] to utilize the HIPAA authorization to obtain records from any other health care provider identified as a

potential defendant[.]" *Id.* at *8. Instead, the dentistry practice "was authorized to use the records in its possession to evaluate the merits of [the p]laintiff's claim without a HIPAA authorization." *Id.* Thus, the dentistry practice suffered no prejudice, and the court concluded that the plaintiff had substantially complied with section 29-26-121(a)(2)(E). *Id.* at *10.

The plaintiff's claim against the defendant dentist did not meet the same fate. In trial and on appeal, the plaintiff argued that because of the employer-employee relationship between the dentist and the dentistry practice, the dentist had free access to the medical records held by the dentistry practice. The *Wenzler* court concluded, however, that "[t]he 'health care operations' exception to the general requirement of a HIPAA compliant authorization, which was discussed in *Bray*, does not extend to the lengths implicitly urged by [the p]laintiff." *Id.* In reaching this result, the *Wenzler* court first looked to the language of the regulations, which provide that "[a] covered entity may use or disclose protected health information for *its own* treatment, payment, or health care operations." *Id.* (quoting 45 C.F.R. § 164.506(c)). The regulation goes on to state that

> (4) A covered entity may disclose protected health information to *another covered entity* for health care operations activities *of the entity that receives the information*, if each entity either has or had a relationship with the individual who is the subject of the protected health information being requested, the protected health information pertains to such relationship, and the disclosure is:
>
> (i) For a purpose listed in paragraph (1) or (2) of the definition of health care operations; or
> (ii) For the purpose of health care fraud and abuse detection or compliance.

*Id.* (quoting 45 C.F.R. § 164.506(c)). According to the court, the purposes listed in paragraphs (1) and (2) of the definition of health care operations refer to "quality-related health care operations and do not include legal services, which is separately addressed in paragraph (4)." *Id.* (citing 45 C.F.R. § 164.501). Thus, the *Wenzler* court held that "this exception to the authorization requirement would not permit [the dentistry practice] to disclose records to [the dentist] for the purposes of [the dentist's] health care operations (i.e., conducting or arranging for legal services)." *Id.* Because the authorization sent to the dentist was not HIPAA compliant and the plaintiff did not demonstrate that the dentist had another means of accessing the dentistry practice's records for purposes of legal services, the court concluded that the dentist suffered prejudice as a result of the deficient authorization.

The case at bar is essentially identical to *Wenzler*. Here, Appellants have met their burden to demonstrate, at the summary judgment stage, that Baptist was the only medical

provider to hold records. As such, under the health care operations exception, Baptist was "authorized to use the records in its possession to evaluate the merits of [Appellants'] claim without a HIPAA authorization." *Id.* at *8. And because no other records existed, Baptist could not be prejudiced by its inability to obtain any other records.

On appeal, Baptist makes various arguments in an attempt to avoid the health care operations exception. For example, at oral argument, Baptist argued that it could not have known that it was the only provider to hold records during the pre-suit investigative phase, citing *Shaw for Estate of Suttle v. Gross*. But in *Shaw*, we specifically held that the plaintiff failed to meet her burden to demonstrate that the other nineteen providers listed in the pre-suit notice had no relevant records. No. W2019-01448-COA-R3-CV, 2021 WL 1388007, at *10 (Tenn. Ct. App. Apr. 13, 2021), *appeal dismissed* (Tenn. July 2, 2021). In particular, we noted that the plaintiff had "submitted no affidavits or other evidence to demonstrate that these other providers had no relevant records related to the injuries at issue in this case, much less that [the defendants] knew this fact during the pre-trial investigatory phase." *Id.* We therefore were not required to consider the application of the health care operations exception at all.[5]

In this case, however, we have held that Appellants submitted sufficient proof that, viewed in the light most favorable to them, demonstrates that Baptist was the only provider to hold records related to the care of Elizabeth. Appellants have therefore demonstrated exactly what the Tennessee Supreme Court requires in order to show substantial compliance: that Baptist was able "to obtain and review a plaintiff's relevant medical records." *Thurmond*, 433 S.W.3d at 519–20 (quoting *Stevens*, 418 S.W.3d at 555) (holding that so long as defendants can do so, their health care liability claim will not be "derail[ed]"). Certainly, this is not perfect compliance with the THCLA, but perfect compliance is not required. *See Stevens*, 418 S.W.3d at 554.

Moreover, even assuming arguendo that Appellant was required to demonstrate that Baptist could glean this knowledge during the pre-suit investigative phase,[6] the records themselves suggest that they were the only records relevant to this case, given that the records indicate that Elizabeth was in Baptist's care and custody her entire short life[7] and

---

[5] Indeed, the health care operations exception outlined in *Bray* is not specifically discussed in *Shaw*.

[6] The *Wenzler* court did not discuss, and therefore did not require, that the defendant have knowledge at the pre-suit investigative phase that it was the only provider who possessed relevant records. Instead, it focused on the defendants' concession that only one provider possessed relevant records as sufficient to invoke the health care operations exception. *Wenzler*, 2018 WL 6077847, at *8; *cf. Hayward*, 2023 WL 3119468, at *10 (allowing discovery as to whether the defendant medical provider was "in possession of all the relevant medical records and . . . was permitted to use those records to consult legal counsel and investigate the merits of the upcoming action against it" because "we fail to see any prejudice that [defendant] would suffer resulting from the non-compliant HIPAA authorization").

[7] Elizabeth's records record both her age and her length of stay with Baptist at "0 days[.]"

- 11 -

that both Defendant Doctors cared for Elizabeth while in Baptist's care and custody. So then, the facts, when viewed in the light most favorable to Appellants, establish that Baptist could have discovered that it was the only provider possessing relevant records from the documents it had access to during the pre-suit investigative phase. As such, we are not persuaded to depart from the analysis in *Wenzler* in this particular case.

Baptist next argues that "the regulatory exceptions do not apply" because they are not included in the THCLA as a stated exception to Tennessee Code Annotated section 29-26-121(a)(2)(E). As we perceive it, Baptist essentially invites this Court to disagree with Tennessee Supreme Court precedent. In particular, the Tennessee Supreme Court has held that plaintiffs need only substantially comply with section 29-26-121(a)(2)(E). *See Stevens*, 418 S.W.3d at 554. As such, the fact that the health care operations exception is not explicitly listed as an exception to section 29-26-121(a)(2)(E) does not bar its application. Moreover, the Tennessee Supreme Court has held that one way a plaintiff may show substantial compliance is by demonstrating that the defendant was not prejudiced by the noncompliant medical authorization. In other words, the plaintiff can show that Appellants' noncompliance with section 29-26-121(a)(2)(E) did not prevent Baptist "from receiving a benefit the statute confers[,]" e.g., that the noncompliance did not prejudice the defense. *See Martin*, 600 S.W.3d at 334–35. And the Tennessee Supreme Court has explicitly held that a healthcare provider does not need a HIPAA authorization to obtain and use the medical records in its own possession for the purpose of arranging legal services. *See Bray*, 523 S.W.3d at 623. The only logical conclusion to be drawn from these three cases is that a plaintiff substantially complies with section 29-26-121(a)(2)(E) when his or her noncompliant medical authorization does not prevent a defendant health care provider from obtaining and using all the relevant medical records pertaining to the claim, a rule that we, like other panels of this Court, apply in this case. *See, e.g., Wenzler*, 2018 WL 6077847, at *7–10. The lack of explicit exception in section 29-26-121(a)(2)(E) does not authorize this Court to depart from Tennessee Supreme Court precedent. *See Schultz' Est. v. Munford, Inc.*, 650 S.W.2d 37, 39 (Tenn. Ct. App. 1982) ("Since the issue before us has been passed on by the Supreme Court and since we are an intermediate appellate court, we are not at liberty to depart from precedent decisions.").

Next, Baptist argues that HIPAA did not authorize the use of Elizabeth's medical records during the pre-suit notice period because this investigative period does not constitute litigation. Baptist cites no authority for this proposition. Our research indicates that the Tennessee Supreme Court rejected a very similar argument in *Bray*. In particular, the defendant doctor in that case argued that "'health care operations' do not include consultation with an attorney regarding a potential claim prior to the commencement of a lawsuit." *Bray*, 523 S.W.3d at 623. The doctor therefore argued, like Baptist in this case, that the legal services included in the term "health care operations" "applies only to proceedings following the filing of a complaint." *Id.*

The Tennessee Supreme Court rejected this "narrow interpretation." *Id.* The Court explained as follows:

> Under HIPAA regulations, "healthcare operations" include arranging for legal services. HHS has indicated that a healthcare provider may share health information for "litigation purposes" with its lawyer. HIPAA does not limit "legal services" and "litigation purposes" to pending lawsuits. Although providing pre-suit notice does not commence a lawsuit, pre-suit notice is a prerequisite to the commencement of a healthcare liability claim and is provided to each healthcare provider who "will be a named defendant" in the lawsuit. [The plaintiff's] pre-suit notice was a predicate to filing suit against [the defendant doctor]. [The plaintiff's] pre-suit notice to [the defendant doctor], as the sole healthcare provider who would "be a named defendant," sufficiently invoked the regulatory exception to the general requirement of a HIPAA-compliant medical authorization.

*Id.* (internal citations and footnotes omitted). Likewise, the pre-suit notice sent to Baptist was sufficient to invoke the regulatory exception to the general requirement of a HIPAA compliant medical authorization in this case, notwithstanding the fact that a lawsuit was not yet filed.

In sum, Appellants have demonstrated, for purposes of summary judgment, that Baptist was able to obtain and use the only relevant medical records to this case during the pre-suit investigative phase of litigation. Because Baptist was not prejudiced by Appellants' admittedly noncompliant medical authorization, we conclude that Appellants substantially complied with section 29-26-121(a)(2)(E), that they were entitled to the 120-day extension to the statute of limitations, and that their claim against Baptist was not time-barred. We reverse the trial court's dismissal of Appellants' claim against Baptist.

The same cannot be said, however, of Appellants' claim against the Defendant Doctors. Here, Appellants focus on the undisputed fact that the Defendant Doctors had access to Elizabeth's medical records. But the question is not simply whether the Defendant doctors had access to the relevant medical records, but whether they were authorized to use those records to consult with legal counsel in order to evaluate the merits of a potential claim. *Bray*, 523 S.W.3d at 623. And HIPAA does not authorize the Defendant Doctors to use records outside their own possession for the purposes of arranging legal services. *Wenzler*, 2018 WL 6077847, at *10; *see also* *Lott v. Mallett*, No. W2020-01233-COA-R3-CV, 2022 WL 894755, at *7 (Tenn. Ct. App. Mar. 25, 2022) ("HIPAA does not authorize [defendant medical group] to disclose to [defendant doctor] in the absence of a compliant HIPAA authorization for [the doctor] for any purposes other than those listed in 45 C.F.R. § 164.506(c)(i) & (ii), regardless of the fact that [the doctor] was an employee of [the medical group] at the time of the negligence at issue. Because [the doctor's] own legal

services are not included in paragraphs (i) or (ii), HIPAA simply does not permit [the medical group] to disclose records to [the doctor] for purposes of this litigation." (citing *Wenzler*, 2018 WL 6077847, at *10)). We therefore conclude that the Defendant Doctors failed to receive a HIPAA compliant medical authorization that allowed them to obtain and use the records held by Baptist for purposes of evaluating the merits of Appellants' potential claim. So then, Appellants failed to substantially comply with section 29-26-121(a)(2)(E) with regard to the Defendant Doctors.

In the absence of substantial compliance with section 29-26-121(a)(2)(E), Appellants did not receive the 120-day extension on the applicable statute of limitations with regard to the claim against the Defendant Doctors. *See* ***Byrge v. Parkwest Med. Ctr.***, 442 S.W.3d 245, 249–50 (Tenn. Ct. App. 2014) ("[I]n order for [p]laintiff's [f]irst [c]omplaint to have been timely filed, [p]laintiff must have complied with [section] 29-26-121 in order to receive the additional 120 day extension of the statute of limitations. . . . Because [p]laintiff failed to comply with [section] 29-26-121, [p]laintiff did not receive the 120 day extension, and, therefore, his first complaint was not timely filed."). As such, Appellants' claim against the Defendant Doctors was filed outside the applicable one-year statute of limitations and was properly dismissed as untimely.

## IV. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellants, Laura S. Christie and Kevin P. Christie, and one-half to Appellee Baptist Memorial Hospital, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 14 -